RALPH EVERETT and HILDA M. EVERETT BAILEY, as Administrators, etc., of JACOB EVERETT, Deceased, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23815.)

Court of Claims, February 8, 1938.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell* and *Gerald K. Carey, Assistant Attorney-General,* of counsel], for the defendant.

GIBBS, J. The claim is one to recover damages for the death of claimants' intestate. While driving his automobile out of a village parking lot in Albion, N. Y., at about eleven o'clock P. M., the claimants' intestate drove over the south wall of the Barge canal and was drowned.

The Barge canal intersects Main street in the village of Albion at right angles. There is a roadway, occasionally referred to as Dock street, which runs easterly from Main street between the Barge canal on the north and the Burrows Block on the south. This roadway makes a sharp southerly turn between the Burrows Block and an old warehouse into the village parking space, and then continues along the south side of the warehouse to Platt street. The distance between the Burrows Block and the water's edge of the canal is about thirty-seven feet. The traveled portion of the roadway extends over the blue line, which marks the southern boundary of the canal land, by about three and one-half feet.

This roadway is a winding, one-block street of irregular width, and not in the location of general traffic; it is not a connecting link in any main highway; its location and use were such that it is probable that only such persons would use it who previously knew of its location or were especially directed to it for some particular purpose; it is neither constructed nor maintained by the State of New York nor operated under the patrol system, and it was not used by the State in the maintenance or operation of the canal.

The immediate surrounding area was well lighted. When claimants' intestate drove his automobile from the parking lot in a general northwesterly direction from the parking space onto the highway, instead of turning sharply to the west, he continued on in a direct line into the canal.

The claimants first base their claim to recovery upon the charge that the State constructed and maintained a nuisance at the *locus in quo*. Legal nuisance has been variously defined, depending somewhat upon the circumstances of the case then being immediately considered, but in the aggregate those definitions may be summarized as follows: As a general rule, every unlawful use by a person of his own property in such a way as to cause material annoyance, discomfort, or hurt to other persons, or the public generally, and every enjoyment by one of his own property, which violates the rights of another in any essential degree, constitutes a nuisance. (*McNulty* v. *Ludwig & Co.*, 153 App. Div. 206.)

We are satisfied that there is nothing in the evidence nor in the cases to uphold the contention of the claimants on the theory of nuisance.

The construction of the canal was finished through the village of Albion in 1914; there was no dock built at the *locus in quo* and no former one continued. A concrete wall was built along the southern edge of the canal with an elevation of one and nine-tenths feet from the traveled part of the highway to the top of the wall, and there was no invitation to the public, direct or implied, to use the canal property at that location.

It may be that the village of Albion was under a duty to erect suitable barriers or signals at this location, for it may well be sustained that this roadway, by reason of its long-continued but limited use, has now an established status as a thoroughfare; it should be clear, however, that this would only be to such an extent that it is confined to property outside the blue line of the canal. There can be no rights as against the State by user, however long that may have been, and such part of this traveled roadway at the *locus in quo*, which is on canal property, is and has been used by sufferance and not by right. (*Grimes* v. *State*, 120 Misc. 710: *Donahue* v. *State*, 112 N. Y. 142.)

In the *Grimes* case (*supra*) the claim was brought to recover for the value of a horse which was injured and died by the breaking down of a bridge over a sluiceway under the towing path of the canal. This towing path was maintained by the State as part of its canal system and had been used for many years by the public as a highway. The court said: " Neither had the claimant received any permission from the State to use the said towing path. He

was, therefore, a trespasser and the State was not bound then, nor is it now, to use any degree of care to keep its towing path in condition for use by trespassers. Of course, like all other property owners, it may not place upon its property spring guns, dangerous traps, pitfalls, etc., whereby trespassers would be unduly injured without notice. But outside of that, the State owes no duty to a trespasser except to abstain from injuring him intentionally. But, even though we overlook the trespass of the claimant, and hold that under the continued user of the towing path in question the general public had acquired at least what might be termed a license to use this towing path as a highway arising by implication from long-continued use with the knowledge and acquiescence of the State, yet even then the claimant would be in no better position to establish his claim. The Court of Appeals, in the case of *Donahue* v. *State* (112 N. Y. 142), settled the law applicable in this case."

In the *Donahue* case (*supra*) the claimant was injured while using the canal property as a passageway, and the court said: " But it was merely by sufferance that it was so used, and not by any agreement or permission. Nor did the State owe any active legal duty to protect those who made use of its land. It owed a duty to abstain from injuring the plaintiff, either carelessly or intentionally; but it owed her no duty of active vigilance to see that she was not injured, while upon the land for her own convenience. (*Splittorf* v. *State*, 108 N. Y. 214.) "

The village of Albion had no legal right to erect a barrier or warning signals on canal property; nevertheless, it is entirely within reason to assume that permission would have been granted by the State to erect a barrier or other warning signals on the canal property at the *locus in quo*, if permission had been requested, especially as the State did not use the strip of land between the traveled highway and the canal; but there was at least fourteen feet of the width of this driveway outside of the blue line of the canal, which would have left ample room for this highway for the purposes for which it had been used, if the village of Albion had erected a barrier on its property outside of the blue line. (*Veeder* v. *Village of Little Falls*, 100 N. Y. 343.)

However, we are of the opinion that the accident was caused not by the negligence of the State but by the negligence of the claimants' intestate.

It is elemental that the claimants cannot recover against the State if their intestate was guilty of negligence or contributory negligence; if the death of claimants' intestate was due solely to his own negligence, or to the united, mutual and concurring negligence of the State and the decedent.

On this point definite evidence was offered by the State which established the negligence of the decedent. The decedent was driving rapidly and did not slacken his speed as he went straight out and over the bank. A police officer testified that he saw the decedent's car being driven without lights and that even after the witness shouted to the decedent to put on his lights nothing was done in that regard. In definite corroboration of this testimony the physical finding that the lighting switch had not been turned on, ascertained after the car was taken from the canal, is absolute.

Section 318 of the Highway Law provides as follows: " Every vehicle whether stationary or in motion while upon any public street, avenue, highway or bridge, shall have attached thereto a light or lights so placed as to be clearly visible, from the front and from the rear from one-half hour after sunset to one-half hour before sunrise."

The claimants' intestate violated a mandatory statute and was guilty of negligence. (*Martin* v. *Herzog*, 228 N. Y. 164; *Giminsky* v. *Irving*, 210 App. Div. 343.)

In discussing this matter as it affected the charge to the jury in the *Martin* case (*supra*), Judge CARDOZO wrote: " They should have been told not only that the omission of the lights was negligence, but that it was ' *prima facie* evidence of contributory negligence,' *i. e.*, that it was sufficient in itself unless its probative force was overcome  *  *  *  to sustain a verdict that the decedent was at fault."

The claimants offered no evidence to overcome the *prima facie* negligence or contributory negligence of the decedent. The entire circumstances surrounding the departure of claimants' intestate from the parking place at eleven o'clock that night, both as matters of fact and of law, conclusively prove that his contributory negligence was the proximate cause of his death.

The decedent's failure to operate his car with such reasonable care, under the circumstances as an ordinary prudent person would do, and his neglecting to see at a time when sight would have availed him, caused his death.

The claim should be dismissed on both the law and the facts. Let judgment be entered accordingly.

RYAN, J., concurs.