BILLY SLOAT AND HAZEL HEDGES, APPELLANTS AND CROSS–RESPONDENTS, *v.* OSWALD TURNER, M. TURNER, M. YASUTAKE, BERTHA SHAFTON, MARJORIE PERRY, STATE OF NEVADA ON RELATION OF ITS DEPARTMENT OF HIGH–WAYS, GRANT BASTIAN, HIGHWAY ENGINEER, RESPONDENTS AND CROSS–APPELLANTS.

No. 8286

April 28, 1977                    563 P.2d 86

[Rehearing denied June 8, 1977]

*R. Paul Sorenson* and *Kermitt L. Waters,* of Las Vegas, for Appellants and Cross-respondents.

*Robert List,* Attorney General, and *D. Michael Clasen,* Deputy Attorney General, Carson City, for Respondents and Cross-appellants.

## OPINION

By the Court, ZENOFF, J.:

This appeal is taken from an inverse condemnation award granted to the appellants, plaintiffs below. The trial court found as a matter of law that appellants had prescriptively perfected an easement over property condemned by the state for purposes of erecting Interstate 15 and charged the state with

compensation for this deprivation of access. Concurrently, it held the state liable to appellants for the reduction in market value caused by the completion of the freeway. Appellants' only claim on appeal is for an increase in the allowance for attorney's fees.

The cross-appeal for this judgment for appellants, cross-respondents, presents the main issues to be decided by this court. Respondents have cross-appealed for reversal urging first that the lower court erred in holding that a prescriptive easement had actually been acquired, and second, that NRS 37.110(3) which provides for compensation even when there is not an actual taking of the property does not apply unless there is actual physical injury or damage to the property or unless an existing right is impaired or extinguished. Although cross-appellants have raised other questions related to the judgment, we shall not consider them for a resolution of the above issues is dispositive of the cross-appeal.

Because a decision on the cross-appeal in favor of the cross-appellants and against the appellants, cross-respondents, would render the initial appeal nugatory and unnecessary to consider, we proceed first to resolve the questions tendered by the cross-appeal.

1.    Appellants Billy Sloat and Hazel Hedges purchased adjacent tracts in Clark County on June 13 and November 4 of 1963 respectively. At that time the properties were completely landlocked. Their land was, and still is, completely bounded on all sides by private property with a Union Pacific Railroad right-of-way passing through the northwest corner of each tract. The nearest developed road, Lamb Boulevard, is located in excess of one-half mile due east.

No rights of access were acquired with the purchases nor were any obtained from the surrounding landowners. To travel to their land the appellants traveled directly across private property from Lamb Boulevard. It is the use of this route of access eight to ten times a year by appellants which the trial court found gave rise to an easement by prescription.

In order to perfect an easement by prescription it is necessary that there be adverse, continuous, open and peaceable use for five years. Stix v. LaRue, 78 Nev. 9, 368 P.2d 167 (1962). In acquiring land for the construction of Interstate 15 the State of Nevada in 1965 condemned the property upon which the appellants had relied for their prescriptive access. The last tract necessary to completely obstruct appellants' prescriptive access

was acquired by the state on July 21 of that year. It is a well-settled principle that absent a statute allowing adverse user against the state, no rights as to state property can be acquired by prescription. Armstrong v. Morrill, 81 U.S. (14 Wall) 120 (1872); City of Los Angeles v. Coffey, 52 Cal.Rptr. 218 (Cal.App. 1966); Spotswood v. Spotswood, 89 P. 362 (Cal. App. 1907); Verrill v. School City of Hobart, 52 N.E.2d 619 (Ind. 1944); Everett v. State, 2 N.Y.S.2d 117 (1938); Burgett v. Calentine, 242 P.2d 276 (N.M. 1951); Tripp v. Bagley, 276 P. 912 (Utah 1928); Attorney General v. Revere Copper Co., 25 N.E. 605 (Mass. 1890); Scofield v. Scheaffer, 116 N.W. 210 (Minn. 1908); Cottrill v. Myrick, 12 Me. 222 (1835). No such statute exists in Nevada. The sole statutory authority on the subject of easements over state lands, NRS 322.050, provides only for easements by lease. Further, the statutory period is stayed when the state acquires the land prior to the minimum five years necessary for perfection. City of Los Angeles v. Coffey, supra; Spotswood v. Spotswood, supra; Kapiolani v. Cleghorn, 4 Ha. 330 (1902); Johnson v. Burgeson, 170 P.2d 311 (Wash. 1946); Greene v. Esquibel, 272 P.2d 330 (N.M. 1954); Kasner v. Wilson, 215 P.2d 833 (Okla. 1950); Mogren v. A. P. Investment Co., 131 N.E.2d 620 (Ohio 1956). Because of these restrictions the maximum period of actual adverse user by the appellants could not exceed one year and ten months. The acquisition of the easement property by the state completely precluded any possibility of a prescriptive access route based solely upon appellants' use.

Appellants claimed, however, that the trial court concluded that the prescriptive use of the predecessors in interest, Robert G. and Scottie June Naumann, should be tacked to their use so as to perfect the easement prior to the state's condemnation. The court below made no specific finding of fact as to the extent or duration of any user by the Naumanns. The only evidence found in the record on appeal clearly refutes the possibility of any adverse user on their part. By individual affidavit Mr. and Mrs. Naumann aver that from the date of their purchase of the property, October 30, 1961, until it was sold to the appellants, "they had never continuously consistently enjoyed ingress and egress to said real estate." Even if such prescriptive access had been used, the period from October 30, 1961 to July 21, 1965, less than three years and ten months, would not in itself support a prescriptive easement. There is no additional evidence of any prior adverse user to substantiate

the court's conclusion that a valid prescriptive easement had been gained. In light of such refutation and in the absence of any conflicting evidence this court finds insufficient evidence to support the lower court's conclusion that such an easement existed. If a conclusion is unsupportable, this court has a duty to set it aside. Ophir Silver Mining Co. v. Carpenter, 4 Nev. 534 (1869), cited in Crosman v. Southern Pacific Co., 42 Nev. 92, 108, 173 P. 233, 228 (1918).

If there was no existing right in the appellants of access to their property either by covenant or by prescription, the state's condemnation of the property over which the easement allegedly crossed was not a deprivation of access compensable under Article I, Section 8, of the Nevada Constitution. Therefore, the respondents owe no liability to the appellants for a right which did not exist. The trial court erred in so holding.

2. The trial court alternatively held that apart from the easement by prescription the state was liable to appellants for damages under NRS 37.110(3). This statute states, in pertinent part, that:

"The court, jury, commissioners or master must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

\* \* \*

"3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages."

In awarding damages under this section the court relied on the following language found in Nichols on Eminent Domain:

". . . property is damaged when it is made less valuable, less useful, or less desirable. . . . It is immaterial whether such damage occurs by reason of the construction or the maintenance of the project, so long as it is directly attributable to such causative factor, and irrespective of whether there has been an actual physical taking of any part of such property."[1]

The lower court's reliance on this language is misplaced. The conditioning sentence and the context of the passage, omitted by the court, more fully delineate the particular meaning intended by the author.

"Under the *constitutional provision which requires payment*

---

[1] 4A Nichols on Eminent Domain, § 14.1[1] at 14–19 to 14–21 (3d Ed. 1975).

*of compensation when property is damaged,* consequential damages may be recovered. . . . Under this provision, property is damaged when it is made less valuable, less useful, or less desirable. (The measure of damages in such case is the difference between the fair market value before and after the inflicting of the damage.) Hence, it is immaterial whether such damage occurs by reason of the construction or the maintenance of the project, so long as it is directly attributable to such causative factor, and irrespective of whether there has been an actual physical taking of any part of such property. The depreciation in value, however, must be by reason of *damage to the land itself or to property rights therein.*" (Emphasis added.)[2]

As noted, the statement relied on by the court presupposes a constitutional provision allowing just compensation for damage as well as taking. The Constitution of the State of Nevada provides for compensation based solely on a taking by the state of private property, not for damage thereto. However, even in those states whose constitutions do provide for just compensation based on either the taking of or damage to the property involved, it is only actual physical injury to the property or some derogation of a right appurtenant to that property which is compensable. Ingram v. City of Redondo Beach, 119 Cal. Rptr. 688 (Cal.App. 1975); Eldridge v. City of Palo Alto, 124 Cal.Rptr. 547 (Cal.App. 1975); Holtz v. Superior Court cf City and County of San Francisco, 475 P.2d 441 (Cal. 1970); Albers v. County of Los Angeles, 398 P.2d 129 (Cal. 1965); City of Los Angeles v. Geiger, 210 P.2d 717 (Cal. 1949); Bacich v. Board of Control, 144 P.2d 818 (Cal. 1943). Most notably, in Albers v. County of Los Angeles, supra, at 137, a case involving inverse condemnation, it is stated that "any actual physical injury to real property caused by the improvement . . . is compensable." This language was further explained in Holtz v. Superior Court of City and County of San Francisco, supra, at 445, "Thus we limited our holding of inverse condemnation liability, absent fault, to physical 'injuries of real property' that were 'proximately caused' by the improvement." In Eldridge v. City of Palo Alto, supra, a restriction on the right to use property in the form of a zoning ordinance was considered a taking even though there had been no actual exercise of the right of eminent domain. Such an infringement on a right attendant to the ownership of property was considered compensable even though there had

[2]Nichols, supra, at 14–14 to 14–24.

been no physical damage to the property nor was any part thereof actually appropriated by the state.

We think it apparent that NRS 37.110(3) was enacted to apply only when actual physical damage has been inflicted on the property by construction of the improvement or if some property right which is directly connected to the ownership or use of the property is substantially impaired or extinguished. This court has stated "[n]either constitution or statute contemplates compensation for that which does not exist." Probasco v. City of Reno, 85 Nev. 563, 566, 459 P.2d 772, 774 (1969).

No right of access existed at the time the appellants purchased the property and neither did they acquire any. No right of access, prescriptive or otherwise, existed at the time the state condemned the easement property. Neither has there been any actual physical damage to the property owned by the appellants. It is presently in the same landlocked state in which it was purchased with no right of ingress or egress. The construction of the freeway could have no effect on rights which did not exist. If there was not a perfected prescriptive easement at the time the state condemned the property over which the appellants had traveled to reach their land, the construction of Interstate 15 thereon abrogated no right enjoyed by either Billy Sloat or Hazel Hedges. Absent some interference with an existing right or damage to the property, the state cannot be charged with any liability under NRS 37.110(3) to the appellants.

This court therefore finds for the cross-appellants. We reverse the lower court's judgment and remand it to that court for entry of judgment in favor of the respondents, cross-appellants.

Because we so grant the cross-appeal, the judgment upon which the appellants propounded a claim for an increase in attorney's fees is vacated. With its vacation, appellants are no longer the prevailing party and as such are not entitled to any award of attorney's fees. Thus, the sole issue presented for review by appellants now stands moot and consequently the appeal is dismissed.

Reversed and remanded with direction to enter judgment for respondents and cross-appellants on cross-appeal. Appeal dismissed.

BATJER, C. J., and MOWBRAY, and THOMPSON, JJ., concur.

GUNDERSON, J., dissenting:

It appearing to me that my brethren have elected to decide

for themselves matters of fact which the district court otherwise determined upon adequate evidence, I respectfully dissent.

The trial court's finding that plaintiffs or their predecessors in interest had acquired an easement by prescription is supported by evidence showing appellants had used the dirt road openly, notoriously, and adversely for access; others had frequently used the road; the road was in existence when appellants purchased their property; appellants were informed the road came into existence in 1950; and the only way to gain access to appellants' property was along the section line dirt road. Assuming *arguendo* that plaintiffs did not perfect the easement during 1961–1963, the evidence is nevertheless sufficient to support a finding that owners prior to the plaintiffs' immediate predecessors in interest had established one, that such easement was appurtenant to the property prior to 1961, and that it passed to plaintiffs' immediate predecessors and then to the plaintiffs.