THE STATE OF NEVADA, ex rel. NEVADA DEPART-
MENT OF TRANSPORTATION, Appellant, v. LAS
VEGAS BUILDING MATERIALS, INC., a Nevada
Corporation, Respondent.

No. 18176

September 21, 1988                    761 P.2d 843

*Brian McKay,* Attorney General, *James J. Rankl,* Deputy
Attorney General, Carson City, for Appellant.

*Kermitt L. Waters,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### The Facts

On January 15, 1986, appellant Nevada Department of Transportation filed a condemnation action against respondent Las Vegas Building Materials, Inc. (LVBM) to acquire property necessary to the construction of Interstate 95. The subject of the eminent domain action was 41.65 acres of land and an easement affecting 3.21 acres for the relocation of utilities. The condemned property was part of a larger parcel owned by LVBM, a corporation engaged in common mining operations and a sand and gravel processing and sales business.

The parties stipulated that the larger parcel potentially affected by the condemnation consisted of 336.93 acres, and that January 16, 1986, was the date of valuation. Prior to trial, the State filed a motion *in limine* seeking to limit LVBM's presentation of valuation evidence. Specifically, the motion focused on the issue of the highest and best use of the subject property and the impropriety of *adding* to the market value of the land the value of the mineral reserves (i.e., gravel). However, counsel for LVBM informed the court that LVBM was considering the gravel as one of many factors in valuing the property and that its experts would "restrict their testimony to the effect that the presence of the gravel has on market value." Accordingly, the court denied the State's motion.

During its case in chief, LVBM introduced engineering and appraisal testimony critical of the drainage aspects of the pro-

posed highway project. The engineer, Charles Brechler, testified that the placement of the flat bottom ditch and drainage structure was inconsistent with good engineering practice. Specifically, Brechler testified that the proposed drainage structure would (1) silt up and cause an eight to ten acre ponding of water on LVBM's land west of the freeway land, (2) result in ponding of water to a depth of 2½ feet at all times in the concrete box of the drainage structure, and (3) cause three to four acres of ponding on LVBM's property on the east side of the freeway.

The State sought to rebut Brechler's flood damage testimony by introducing evidence concerning the City of Henderson's proposed comprehensive flood control plan. However, ruling that the evidence was a speculative source of special benefits, the trial court granted LVBM's motion *in limine,* thereby precluding the State "from bringing in anything regarding the flood control by the City of Henderson. . . ."

The larger parcel was originally criss-crossed by strips of land, owned in fee by the City of Henderson, which were encumbered by utility easements and the federal government's underground water easement within the Pitman lateral. LVBM submitted evidence that on October 5, 1966, it obtained a ninety-nine year option from the City of Henderson to purchase the land under these easements at a price of $400 per acre (purchases to be at minimum one acre increments and to remain subject to the utility easements). The State introduced evidence that the City of Henderson, by resolution dated July 1, 1986, transferred to the State the land which was the subject of LVBM's option to purchase.

The trial concluded with a jury verdict and subsequent judgment in the amount of $2,574,000.[1] The judgment provided that interest on the judgment would apply from January 16, 1986, to March 25, 1986, and thereafter until paid. Subsequent State motions to alter or amend the judgment upon the verdict, and for a new trial, were denied. In appealing the judgment, the State claims the trial court erred in (1) allowing LVBM to make a double valuation of the land by separately valuing the minerals and adding that value to the market value of the land, (2) preventing the State from presenting evidence of the City of Henderson's proposed flood control plan, (3) allowing LVBM to be compensated for an unexercised option to purchase land, and (4) granting LVBM interest on the judgment prior to the date of occupancy.

---

[1]The fair market value of the property was found to be $1,436,000. Severance damages to the remainder of LVBM's property was held to be $1,000,000. The damage caused by the loss of LVBM's option to purchase was held to be $138,000.

*Discussion*

*Evidence Concerning Valuation of the Land*

The parties do not dispute the law applicable to this issue. In a condemnation action the existence of mineral deposits in or on land is an element to be considered in determining the land's value. Nevertheless, where the property is not taken for the purpose of obtaining the minerals or as an ongoing business it is improper to appraise the mineral deposits separately and add the mineral value to the value of the land. *See, e.g.,* United States v. 91.90 Acres of Land, 586 F.2d 79, 87 (8th Cir. 1978); 4 J. Sackman, Nichols' The Law of Eminent Domain § 13.22, at 13-126, 127 (1985). That is, separate valuation of the minerals apart from the land results in a double valuation and involves speculation.

In the instant case, the State contends that LVBM made a double valuation of the land by separately valuing the minerals and then adding that value to the market value of the land. LVBM claims both its appraisers testified as to the market value of the property—giving consideration to the presence of the aggregates—and thus did not include a double valuation as the State suggests. Our review of the record leads us to conclude that LVBM is correct.

One of LVBM's appraisers testified that the fair market value of the subject parcels, as determined by the comparable sales approach, ranged between $25,000 to $30,000 per acre; using a similar approach, the other appraiser set the value at $20,000 to $30,000 per acre. However, both appraisers testified that, because of the mineral deposits, they valued the property in excess of the value determined by the comparable sales approach. As a result, the State argues that the minerals were separately valued from the land, resulting in an improper double valuation. Although the argument has appeal on its face, it is flawed.

The State in effect suggests that both appraisers first determined the *market* value of the property and then added the value of the gravel. However, the appraisers took the position that there were no comparable sales to the subject property because of the presence of the minerals. That is, the "comparable" sales figures dealt with similar lands excepting the presence of minerals. Thus, both appraisers added what they concluded was the value of the minerals in order to determine the market value of the subject land.[2] Contrary to the State's claim, this is not a double valuation.

---

[2]Thus, for example, as noted in 4 J. Sackman, Nichols' The Law of Eminent Domain § 13.22, at 126-30 (1985):

*Evidence of Henderson's Proposed Flood Control Plan*

LVBM's engineer testified that construction of the freeway in accordance with the plans presented by the State would result in a severe flooding problem for the remainder of LVBM's property. In response, the State sought to put into evidence *proposed* plans of the City of Henderson involving the City's own flood control program in the area. The State argues that the trial court erred in denying the presentation of this evidence. We disagree.

NRS 37.110 in pertinent part provides:

> The . . . jury . . . must ascertain and assess
>
> . . . .
>
> 2. If the property sought to be condemned constitutes only a part of a large parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.
>
> . . . .
>
> 4. Separately, *how much the portion not sought to be condemned,* and each estate or interest therein, *will be benefitted,* if at all, *by the construction of the improvement proposed by the plaintiff;* and if the benefit shall be equal to the damages assessed, under subsection 2 of this section, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value of portion taken (emphasis added).

The statutory scheme provides that the condemnor must pay for damages to the remaining land caused by the condemnor's improvement; the condemnor may also offset any special benefits which are caused by the *condemnor's* improvements. However,

---

In determining just compensation to be paid to the owner, it is not permissible to aggregate the value of the land and value of the deposit. . . . However, while the profits, price or value of the minerals, taken separately, may not be considered, yet the value, extent and quality of such minerals as exist upon the land may be considered. *If the extent and quality and value of the stone as it lies on the land may not be considered, there would be no way by which the value of the land with the minerals could be shown. All legitimate evidence tending to establish value of the land with the minerals in it is permissible.* . . . [C]onsideration may be given to the quantity of the mineral that can be extracted and to the value thereof, purely as evidence for arriving at the value of the land. (Emphasis added.)

the statute does not permit the State to offset damages via special benefits which *may* accrue to the property as a result of a separate planned project by a *third* party.

In construing a similar provision to NRS 37.110, the court in People ex rel. Dept. of Public Works v. Simon Newman Co., 37 Cal.App.3rd 398 (1974), noted:

> Code of Civil Procedure section 1248 authorizes severance damages (subd. 2) and benefits (subd. 3) to be assessed for "the construction of *the* improvement" in the manner proposed by the condemnor. That section does not authorize the offsetting of damages and benefits between distinct and separate projects of improvement simply because the condemning agency has, for its own convenience, joined such separate projects in one action.

*Id.* at 408. This result seems especially appropriate in the present case involving Henderson's *proposed* plans. For example, part of Henderson's flood control plan is contingent upon acquiring a right-of-way on LVBM's land to construct a drainage canal; the canal would link existing water courses and allegedly resolve the flooding problem. However, the practical dilemma presented to LVBM is that it would have no remedy against the State in the event Henderson failed to complete its project[3] or in the event the project failed to cure the flooding problem. Because the proposed flood control plan was a speculative source of benefits from a third party, the trial court was correct in refusing to allow evidence of the plan.

### Unexercised Option to Purchase Land

This court has not heretofore addressed whether an unexercised option to purchase land is a compensable interest in a condemnation proceeding. A review of jurisdictions which have addressed the issue reveals that there are at least two different approaches in resolving the issue: (1) applying a public policy approach or (2) applying a "contract v. property interest" analysis.

The public policy approach focuses on the paramount purpose of eminent domain law—to do substantial justice—and thus concerns itself with fairness and public policy. The leading case taking this approach is County of San Diego v. Miller, 119 Cal.Rptr. 491, 532 P.2d 139 (1975), wherein the California Supreme Court rejected prior California case law holding that an

---

[3]Indeed, at the time of oral argument before this court (June 6, 1988), respondent's counsel noted that Henderson had yet to act on its proposed flood control program.

option to purchase land is not a compensable interest in a condemnation action. Quoting United States v. 53¼ Acres of Land, 139 F.2d 244, 247 (2d Cir. 1943), the *Miller* court emphasized that "the right to compensation is to be determined by whether the *condemnation has deprived the claimant of a valuable right* rather than by whether his right can technically be called an 'estate' or 'interest' in the land." 532 P.2d at 143.[4]

Under the second approach, whether an unexercised option to purchase land is a compensable interest in a condemnation proceeding turns upon the characterization of the optionee's interest as a "property" or a "contract" interest. The majority of courts utilizing this approach have concluded that an option to purchase land is merely a contract right and not a property interest compensable in a condemnation action.[5] In the instant case, the State correctly notes that, in determining whether a particular right is to be compensable in a condemnation action, we have consistently used a "property right" analysis.[6] For example, in Sloat v. Turner, 93 Nev. 263, 563 P.2d 86 (1977), we held that NRS 37.110(3)[7] "was enacted to apply only when actual physical

---

[4]The *Miller* court determined that the right to purchase created by an option is a substantial one, noting that (1) the right is irrevocable by the optionor, (2) the right may be exercised against the optionor's successors following his death, (3) when recorded, the right (under California law) creates a cloud on the optionor's title for one year following expiration, (4) unless the agreement provides to the contrary, the right is generally assignable, and (5) for tax purposes, the assignment of the right is treated as a sale of the land by the optionee. 532 P.2d at 141.

[5]*See, e.g.,* Orleans Parish School Bd. v. Lupo, 470 So.2d 202 (La.App. 1985); State v. New Jersey Zinc Co., 193 A.2d 244 (N.J. 1963); Carroll v. Louisville, 354 S.W.2d 291 (Ky. 1962); Phillips Petroleum Co. v. Omaha, 106 N.W.2d 727 (Neb. 1960); Cravero v. Florida State Turnpike Authority, 91 So.2d 312 (Fla. 1956).

A substantial exception to the general rule has been applied to those cases in which a *lease* is involved providing that the lessee may at anytime during the lease exercise an option to purchase the land. *See, e.g.,* Nicholson v. Weaver, 194 F.2d 804 (9th Cir. 1952). In such a situation the lessee is already involved in using the land and, often, there is strong reason to suppose that the option would be exercised when the time ripens.

[6]*See, e.g.,* Meridith v. Washoe Co. School Dist., 84 Nev. 15, 435 P.2d 750 (1968) (a restrictive covenant is deemed to be "property" in a constitutional sense, for which just compensation must be paid); State v. Wells Cargo, Inc., 82 Nev. 82, 411 P.2d 120 (1966) (an express easement is an interest in *land* and therefore compensable in an eminent domain action).

[7]NRS 37.110(3) provides:

The court, jury . . . must ascertain and assess:

. . . .

(3) If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.

damage has been inflicted on the property by construction of the improvement or if some *property right* which is directly connected to the ownership or use of the property is substantially impaired or extinguished." 93 Nev. at 269, 563 P.2d at 89 (emphasis added). Furthermore, we have previously determined that "an option to purchase property is a contract. . . ." Mohr Park Manor, Inc. v. Mohr, 83 Nev. 107, 111, 424 P.2d 101, 104 (1967).

However, despite our determination in *Mohr,* we agree with the California court in *Miller* that the right to purchase created by an option may be a substantial and valuable right.[8] Accordingly, in consideration of fairness and public policy, although we decline to rule that *any* option to purchase land is of value compensable in a condemnation action, where the exercise of the option is a *foregone conclusion* we hold that the option is a valuable right compensable in such an action.

In the present case, LVBM was granted a ninety-nine year option to purchase land now condemned for use in the construction of the interstate. No doubt, over the years since the option was granted in 1966, the value of the land subject to the option has appreciated to an amount substantially greater than the option price of $400.00 per acre. It defies common sense to contend that LVBM would disregard the obvious economic benefit it enjoys as a result of the option. Accordingly, because we view LVBM's exercise of the option as a foregone conclusion, the option to purchase is a valuable right compensable in the instant condemnation action.

### Interest on the Judgment

The State contends that the trial court erred in allowing LVBM interest on the judgment prior to the date of occupancy. Again, we disagree.

In Manke v. Airport Authority, 101 Nev. 755, 710 P.2d 80 (1985), we noted, "where condemned property is vacant, unimproved, and of value to the condemnee primarily for purposes of investment or development . . . a taking occurs on the date of summons." 101 Nev. at 758, 710 P.2d at 82. Accordingly, in such a case the landowners are entitled to interest from that date. *Id.*

The State makes the novel argument that, because a primary value of the condemned land is mineral reserves, the service of

---

[8]*See supra* note 4.

summons in the instant case, unlike *Manke,* did not operate to "destroy" development of the condemned property until the State actually occupied the land. The State thus suggests that nothing prevented LVBM from mining the condemned land until the State occupied the land. This argument is unsupportable. State Engineer Eugene Weight testified that the State would not mine the gravel on the right-of-way because they *needed it in place* and "borrow costs the State $3.00 a cubic yard in place." Weight's testimony supports LVBM's argument that, had LVBM attempted to mine the subject land, the State—in order to prevent a $3.00 per cubic yard replacement cost—certainly would have sought immediate occupancy. In effect, once the condemnation action was filed, the subject property had no further use to LVBM. Thus, pursuant to *Manke,* LVBM was entitled to interest on the judgment prior to the date of occupancy.

Having reviewed the issues raised by the State and perceiving no error on the part of the trial court, we hereby affirm the judgment.