[Civ. No. 8271.  Third Dist.  May 18, 1954.]

BASIL BURTON BEAGLE, Appellant, v. EUNICE D. HANKS et al., Respondents.

Alfred E. Frazier for Appellant.

Stanley Pugh and Donald B. Webster for Respondents.

VAN DYKE, P. J.—Plaintiff (appellant here) filed an action to quiet title to certain real property, naming as parties defendant his four brothers and sisters.  The complaint alleged that plaintiff was the owner in fee of certain described prop-

erty and that he had been in the actual, exclusive and adverse possession thereof for over five years before the filing of the complaint, claiming to own the same in fee; that he had paid all taxes during the alleged period of adverse possession. Defendants answered, asserting that, subject to administration in the estate of their father, they were the sole owners of the property in controversy and that plaintiff had no right, title or interest therein. The court adopted findings of fact as follows: That plaintiff and defendants were all children of C. M. Beagle; that by his will his property was given to the four defendants in equal shares; that in 1929 said decedent owned the real property in question and in that year entered into an oral agreement with the plaintiff, wherein the parties mutually agreed to sell and to buy the subject property for the sum of $5,000, which plaintiff agreed to pay "as he could"; that plaintiff was given an initial credit of $1,000 upon the purchase price as an advancement of his probable inheritance as one of the five children of his father; that plaintiff took possession of the property and held such possession continuously from that time; that in 1932 plaintiff paid his father $600 in cash; that by the agreement plaintiff was required to pay all taxes and had done so; that immediately after possession of the property was taken by plaintiff the father moved away and during the remainder of his lifetime resided with his other children; that he died in 1943 and by his will left plaintiff the sum of $5.00 only, all the rest of his property going to the other four children; that plaintiff had never at any time claimed to hold or possess the real property adversely to his father or to the defendants, nor had he ever indicated by word or deed that he claimed the property adversely; that his possession of the property had never at any time been adverse to his father or to his brothers and sisters and was in fact in subordination to the legal title; that plaintiff was not the owner of the property, saving and excepting his rights as vendee. Conformable conclusions of law were drawn and judgment was entered that plaintiff's only right in the property was such as he took and held under the contract. From that judgment the plaintiff has appealed.

The record contains ample evidence to sustain the findings of fact made by the court. For example, appellant himself testified that he had agreed to buy the ranch from his father and had taken possession thereof under that agreement; that under the agreement he was obligated to pay the

purchase price when he could; that he knew his father to be the owner of the property and that he believed his father continued to own the property up to the time he died. Concerning his claim to have been holding adversely during the eight years that elapsed between his father's death and his filing of the complaint appellant testified as follows: Asked if he had ever told Wayne Beagle that he claimed to own the ranch, he said that he had so told him about 10 months or so before filing his complaint, but had not told him before that date; that he could not recall telling Edna Marston that he claimed to own the ranch and had never talked to her about the property; that he had never told his brother Vernon he claimed to own the property nor his sister Eunice Hanks. Wayne Beagle testified that appellant had never told him that he claimed to own the ranch. This evidence sufficiently sustains the findings of the trial court that appellant's entry into possession of the property was under and by virtue of the contract with his father and that he never at any time initiated an adverse claim of title thereto.

Since appellant's entry into possession of the disputed property was admittedly not adverse but was in subordination to the legal title and pursuant to the terms of the agreement between himself and his father it follows that his possession could not become adverse until in some manner he had repudiated his vendor's title and asserted an exclusive right in himself outside the contractual stipulations. (1 Am. Jur. ''Adverse Possession'' p. 814.) Says the text referred to: ''In such case [entry under contract of purchase] it is necessary that notice, either actual or constructive, of the repudiation be given to the vendor.'' The testimony of all the witnesses, including the testimony of appellant, was to the effect that he had never repudiated his contract nor had he ever given any notice, either actual or constructive, to either his father during the father's lifetime or to his brothers and sisters after his father's death that he had changed his position and was asserting an exclusive right in himself. Under such circumstances the statute upon which he relies did not commence to run until at best a short time prior to the commencement of his action. ''The statute will commence to run only from the time when the purchaser openly disavows the title of the vendor and claims in hostility to it; and, even in that case, notice of the repudiation of his title must be brought home to the vendor, or the hostile claim of the vendee must be evidenced by acts of such notoriety that notice to the

vendor will be presumed.'' (*Farish* v. *Coon*, 40 Cal. 33, 56; see also *Unger* v. *Mooney*, 63 Cal. 586 [49 Am.Rep. 100], and *Kerns* v. *Dean*, 77 Cal. 555, 559 [19 P. 817].)

Appellant argues that he proved continuous possession; that he paid all taxes and made improvements upon the property; that he never paid anything to his brothers and sisters, nor did they demand any payment of him which he asserts they could have done when by the will of their father they became vested with title to the property; that his conduct regarding it was sufficient in manner to give reasonable notice that he claimed the property. If we assume for the purpose of argument that by reason of all these things the trial court could have found that his claim of title by prescription had been made out, yet it would not benefit the appellant, in view of the fact that the court found to the contrary, and, as we have pointed out, had ample support in the testimony for that finding. Conflicting inferences from the evidence could be drawn by the trial court to the effect that his possesison had never been adverse and under such circumstances the finding of the trial court is binding upon this court on the appeal.

Appellant further argues that the contract between **himself** and his father whereunder he took original possession of the property was abandoned during the lifetime of his father, or, if not then, was certainly abandoned a reasonable time after his father's death, and that his evidence sufficiently proved adverse holding thereafter. If we assume that the trial court could have found that the contract had been abandoned, yet there was nothing in the testimony to compel the court to that conclusion. Here again the testimony of the appellant and his brothers and sisters concerning the original peaceful entry and long possession of the property without any claim that the possession was hostile to the legal title affords ample support for the court's factual finding that such abandonment had not taken place.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.