[S. F. No. 21356.   In Bank.   Nov. 13, 1964.]

SOUTHERN PACIFIC COMPANY, Plaintiff and Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

Thomas M. O'Connor, City Attorney, and George E. Baglin, Deputy City Attorney, for Defendant and Appellant.

Lawrence L. Howe for Plaintiff and Respondent.

PEEK, J.—Defendant City and County of San Francisco appeals from a judgment which quieted title to certain real

property on the theory that plaintiff railroad, the Southern Pacific Company, had established superior title by adverse possession. The city's appeal relates only to that portion of the judgment which quiets title in plaintiff railroad to parcels designated A through W, which shall be referred to below as vacated street areas.

In 1868 the Legislature adopted an act to survey and dispose of certain salt marsh and tidelands belonging to the state, located in the City and County of San Francisco. (Stats. 1867-68, ch. 543, p. 716.) Under the act the Governor was required to appoint three persons, to be known as the Board of Tide Land Commissioners. Upon appointment, and pursuant to the act, the board surveyed the tidelands at Mission Bay, established a waterfront line, and subdivided the area into lots and blocks, reserving various areas, as directed by the statute, for streets, docks, piers, slips, canals, drains and other uses necessary for public convenience and for purposes of commerce. The commissioners were directed to sell off into private ownership, at public auction, all of the lots and blocks not reserved for public purposes.

The act of 1868 also granted to Southern Pacific Railroad Company and Western Pacific Railroad Company, plaintiff railroad's predecessors, a right to select 30 acres each, "exclusive of streets, basins, public squares and docks," for use as a railroad terminus, provided each railroad made its selection within a stated time and each expended the sum of $100,000 for improvements. Each railroad fully complied with the terms of the act. The 60-acre parcel so selected was generally located at Mission Bay south of Channel Street, between Third and Eighteenth Streets. The plaintiff railroad or its predecessors have maintained a railroad terminus upon this property up to the present day.

By subsequent legislation the street areas within the 60-acre parcel were vacated and donated to the city "with full power to regulate, manage, control, and donate or dispose of the same, by ordinance, for railroad and other commercial purposes," on the express condition "that any lands donated under authority of this Act to any railroad company shall revert again to the State of California, if at any time such railroad company shall cease to use, for terminal purposes, the lands granted to it." (Stats. 1871-72, ch. 490, p. 722.) The city's power to dispose of the lands so granted was thereafter limited in various particulars. (Stats. 1873-74, ch. 264, p. 359; Stats. 1903, ch. 265, p. 363.)

In 1892 the predecessors of plaintiff railroad filed a petition

with the city's board of supervisors seeking to have the street areas within the 60-acre parcel vacated in order to allow the railroad "to fill in and improve said tract of land for depot purposes, the erection of machine shops and other improvements incidental to its purposes. . . ." The board of supervisors honored this request by its Order No. 2599. The predecessor railroads commenced use of the vacated property for the purposes outlined in the petition, which use has continued up to the present day.

On July 11, 1905, the predecessor railroads conveyed the 60-acre parcel to plaintiff railroad. With the same instrument they conveyed "all of the right, title and interest of said parties of the first part in and to all Streets and Avenues adjacent to said lands above-described, and in and to all lands formerly covered by public Streets and Avenues which were closed by Order No. 2599 of the Board of Supervisors of said City and County of San Francisco, dated December 28, 1892."

In 1947 the Legislature adopted an act relinquishing to the city all right, title and interest in the former street areas within the 60-acre parcel, the city being vested thereby "with the unqualified right to own, hold, use, sell, lease, or otherwise dispose of, said streets or street areas without restriction of any kind except as may now or hereafter be set forth in its charter." (Stats. 1947, ch. 434, p. 1335.)

This case involves two main questions: (1) whether the property involved was subject to loss through adverse possession; and (2) if the property was so subject, whether the railroad has shown the existence of the several elements necessary to its acquisition of superior title by adverse possession. The trial court answered both of these questions in the affirmative.[1] Since the resolution of either question adversely to the railroad will compel a reversal of the judgment below, and since the second question must be so resolved, we need not and do not decide the first question.

---

[1]Prior to 1935 real property held by the state or any of its subdivisions was subject to loss by adverse possession if such property was held in a proprietary capacity and not reserved for or dedicated to some public use. (See *Henry Cowell Lime & Cement Co.* v. *State*, 18 Cal.2d 169 [114 P 2d 331]; *City & County of San Francisco* v. *Straut*, 84 Cal. 124 [24 P 814]; *Ortiz* v. *Pacific States Properties*, 96 Cal.App.2d 34 [215 P.2d 514].) Since the amendment of section 1007 of the Civil Code in 1935, title to property held by the governmental agencies therein described is not subject to loss by adverse possession regardless of the character of the property. The trial court held that the property here involved was held in a proprietary capacity during the 10 years next preceding 1935, and was therefore subject to loss by adverse possession at the end of that period.

■ There is little doubt that the city's vacation of the street areas within the 60-acre parcel by Order No. 2599 in 1892 gave rise to an easement by implication. (See 2 Am. Law of Property, p. 255 ff.) It is further clear that whatever interest the railroad's predecessors had in the vacated street areas was conveyed to plaintiff railroad in 1905. Therefore, since the scope of an easement created by implication is to be inferred from the circumstances which give rise to the implication (Civ. Code, § 806), the railroad, during the period here in question, owned an easement in the vacated streets limited in scope to use for railroad terminal purposes. The circumstances which gave rise to the implication, and more particularly the petition which prompted Order No. 2599, allow of no other conclusion.

■ Although the owner of an easement by implication may acquire the underlying fee by adverse possession (see *People* v. *Ocean Shore Railroad,* 32 Cal.2d 406, 415-416 [196 P.2d 570, 6 A.L.R.2d 1179]), in order to have title quieted in him on that basis he must, like any other adverse possessor, demonstrate that the several elements necessary to his claim existed during the period of time indicated by the applicable statute of limitations. (See 2 Am. Law of Property, p. 267.) That statute is in this case section 315 of the Code of Civil Procedure, which limits actions by the state in respect of real property to a period of 10 years following the accrual of the cause of action. (See *People* v. *Chambers,* 37 Cal.2d 552, 556 [233 P.2d 557].) Because property owned by the state or any of its subdivisions has not been subject to loss through adverse possession since the 1935 amendment of section 1007 of the Civil Code (see fn. 1, *supra*), the relevant period in this case covers the 10 years preceding 1935.

The trial court found in substance that since July 11, 1905, the date of the conveyance from the predecessors of plaintiff railroad, the railroad had been in open, actual, notorious, and exclusive possession of the vacated street areas, claiming the same adverse to the whole world. It further found that the railroad had paid all taxes assessed against the property, and from the evidence concluded that the railroad had established its title in fee to the disputed areas. The issue here is whether there are any facts which support the trial court's finding that plaintiff's possession was in some real sense adverse to the city's interest in the vacated streets. If we conclude here, as we did in *People* v. *Ocean Shore Railroad, supra,* 32 Cal.2d 406, 416, that plaintiff's ''activities and improvements were consistent with the claim of a mere ease-

ment, and there was no additional user or other acts which could be construed as notice to the owner that [the railroad] was claiming a right to the fee,'' the judgment must be reversed.

To determine whether plaintiff has established that its use of the subject property was adverse to the interest of the owner, it is first necessary to determine what kinds of uses would be permissible as within the scope of the implied easement for railroad terminal purposes. In *City of Long Beach* v. *Pacific Electric Ry. Co.*, 44 Cal.2d 599 [283 P.2d 1036], we held that a railroad was entitled to more than nominal compensation for the taking of its right of way by condemnation when a portion of that right of way was being used for a purpose which, though consistent with the grant ''for railroad purposes,'' was not directly concerned with the use and maintenance of railroad tracks and equipment. We there indicated that a ''railroad may use its right of way for many commercial purposes unless specifically prevented from so doing. For example, the following uses for a railroad right of way have been held to be proper since they contributed to the railroad's business: a sawmill, lumber shed, store or boarding house . . . a manufacturing company . . . a lumber yard, corn crib, grain elevator and warehouses. . . .'' (*Id.* at p. 603.) Furthermore, in *Goodman* v. *Southern Pac. Co.*, 143 Cal.App.2d 424 [299 P.2d 321], where a right of way had been granted in fee on condition that the land never be used for other than railroad purposes, it was held that the use of the land for the manufacture of concrete pipe, a warehouse for seed products, a warehouse for farm supplies, and a vegetable shed, did not work a forfeiture because such businesses shipped their products by the railroad. ■ These cases indicate that a limitation to railroad terminal purposes should be construed so as to permit any use consistent with the operation, maintenance, or convenience of the railroad terminal.

■ The record in this case reveals that since 1892, when the street areas within the grant were vacated by the city to allow for railroad use, these areas have been assimilated to and have become a part of the transcontinental terminal operation conducted on the granted property since 1868. The vacated streets, like the other portions of the terminal, are interspersed with railroad tracks and contain buildings directly pertinent to the operation and maintenance of the railroad, such as a record storage warehouse, a maintenance

of ways shed, and switchmen's houses. Also within the vacated street areas are buildings and areas less pertinent to the mechanical operation of the railroad, but still related to the overall operation of the terminal, such as a storage area for lumber brought by sea, an icing shed for fruit to be transshipped, and various warehouses. It is clear that the use to which the subject property has been put in no way exceeds the scope of use contemplated when the streets were vacated. That use is therefore not adverse to the city's interest in the property and cannot form the basis of a claim of adverse possession.

Plaintiff argues secondly that, even if its use of the vacated street areas was not of such a nature as to apprise the city of its hostile possession, the city was so apprised by other means prior to and during the 10-year period here relevant. It properly observes that use adverse to the scope of permissive user is not essential to the raising of a cause of action in the owner, and the starting of the statute of limitations against him. ██ Thus one who uses land with the consent of the owner may effect an ouster for purposes of adverse possession by unqualified and definite renunciation of subordination to the owner even though the character of use to which he puts the property after renunciation may be identical to that contemplated by the parties upon entry. However, such renunciation must be of sufficient clarity to put the owner on notice that subsequent possession is adverse to his title, for the very essence of the requirement of ouster is *notice*. (See *Beagle* v. *Hanks*, 125 Cal.App.2d 298 [270 P.2d 113].)

There is nothing in the record of the instant case to indicate that the city at any time after it had vacated the streets for plaintiff's use had actual notice that the permissive user contemplated had become adverse to its own interest in the property. Therefore we must inquire whether the city may be charged with constructive notice of plaintiff's claimed renunciation. Section 19 of our Civil Code provides that "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." ██ Whenever particular proven circumstances are such that reasonable men could differ as to whether a prudent man would have been put "upon inquiry" by knowledge of them, the resultant question is one of fact to be determined by the fact-finding body. (*Marino* v. *County of Tuolumne*, 118 Cal.App.2d 675, 677 [258 P.2d 540]; *Edwards*

v. *City of San Diego,* 126 Cal.App. 1, 3 [14 P.2d 119].)
However, where the circumstances are such that only one
conclusion could reasonably be reached relative to their suf-
ficiency for that purpose, the question becomes one of law
subject to ultimate resolution by the appellate court.

█ Plaintiff railroad contends that, even if its possession
of the vacated street areas was inceptively permissive, notice
of its adverse claim should be imputed by law to the city
because, after the railroad had entered and occupied the
areas in question, and throughout the period here relevant,
it was shown on the city's tax records and assessment rolls
as the owner of all lands within the original 60-acre grant,
including the vacated street areas. Since the assessment rolls
were presented each year to the city's board of supervisors
for official review and equalization (see Rev. & Tax. Code,
§ 617), it is argued that the city should be deemed notified
that plaintiff railroad claimed an interest in the vacated
streets adverse to its own interest.

It is unfortunate that the tax records and assessment rolls
for the relevant years were not introduced into evidence so
that the nature of the representation therein contained might
have been determined from them. The only evidence relative
to this matter is found in the testimony of Mr. Smith, plain-
tiff's tax agent, wherein he related in summary the results
of his three-day examination of the relevant records. This
testimony was at most unclear as to whether the records
showed plaintiff railroad as the *owner* of the property, or
whether they merely showed the railroad to be the *assessee.*
It is to be observed that statutes governing the preparation
of the assessment roll during the period here relevant did
not require that the owner of assessed property appear on
the roll unless he were also the assessee. (Stats. 1905, ch.
132, p. 134; Stats. 1917, ch. 782, p. 1643; Stats. 1925, ch. 12,
p. 15; Stats. 1927, ch. 223, p. 400.) Clearly the appearance
of plaintiff railroad on the rolls as assessee of the property
in question could not reasonably be considered the basis of
a finding of constructive notice of an adverse claim, for plain-
tiff's possessory interest in the property was clearly taxable.
(See Rev. & Tax. Code, § 107.)

Even if the rolls had listed plaintiff railroad as *owner* of
the vacated street areas here in question, it could not reason-
ably be said that such a listing, viewed in the relevant con-
text, was "sufficient to put a prudent man upon inquiry"
relative to an adverse claim. From 1910 to 1933, and there-

fore during the bulk of the period here relevant, properties owned or used by railroads ''exclusively in the operation of their business in this state'' were subjected to a gross receipts tax ''in lieu of all other taxes and licenses, state, county and municipal. . . .''(Cal. Const., art. XIII, § 14 (1910).) As a result, the great bulk of the vacated street areas, as well as the great bulk of all areas within the boundaries set by the 1868 grant, were exempted from county taxation. Only a few comparatively small areas within the boundaries of the grant were considered ''non-operative'' property and therefore liable to county taxation. Therefore the bulk of the property included within the vacated street areas did not appear on the county roll as locally-assessed property, if it appeared there at all. Clearly, the fiction of constructive notice would be unduly strained if it were held that notice of adverse claim be imputed by law on the basis of representations on the assessment roll concerning property neither assessed nor taxed by county government.

We fail to comprehend the relevance of former section 470 of the Civil Code (1872) to the issues presented by this case. That section provided that ''No railroad corporation must use any street, alley, or highway, or any of the land or water, within any incorporated city or town. unless the right to so use the same is granted by a two-third vote of the town or city authority from which the right must emanate.'' Plaintiff railroad appears to urge that this section was not complied with in the instant case, and that its occupation of the vacated street areas was therefore against law and adverse from the start. It is clear, however, that the section was complied with, so that a consideration of the effect of noncompliance is unnecessary. Order No. 2599, by which the streets within the original grant were vacated for railroad use in 1892, was approved by eight of the eleven supervisors whose votes were noted.

The judgment is reversed insofar as it quiets title in plaintiff railroad to parcels A through W, the vacated street areas. In all other respects the judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Schauer, J.,* concurred.

Respondent's petition for a rehearing was denied December 9, 1964, and the opinion and judgment were modified to read as printed above.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.