[Civ. No. 29234.   Second Dist., Div. Two.   June 23, 1966.]

THE CITY OF LOS ANGELES, Plaintiff, Cross-defendant and Respondent, v. STEPHEN J. COFFEY, Defendant, Cross-defendant and Appellant; COUNTY OF LOS ANGELES, Defendant, Cross-complainant and Respondent.

Robert E. Rosskopf for Defendant, Cross-defendant and Appellant.

Paul Caruso as Amicus Curiae on behalf of Defendant, Cross-defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Spencer L. Halverson and Lambert M. Javelera, Deputy City Attorneys, for Plaintiff, Cross-defendant and Respondent.

Harold W. Kennedy, County Counsel, and Irvin Taplin, Jr., Deputy County Counsel, for Defendant, Cross-complainant and Respondent.

FLEMING, J.—Coffey appeals from a judgment quieting title to real property in favor of the City of Los Angeles and the County of Los Angeles. Pertinent to the cause is the following chronology:

1937. The property in dispute, then owned by Samuel Greenlee, was deeded to the State of California for nonpayment of city and county taxes.

1943. Title to the property was quieted in the state by entry of a judgment which enjoined Greenlee and all persons claiming under him from making claims against the property (Rev. & Tax. Code, §§ 3618-3638).

1949. Greenlee executed a quitclaim deed to the property to Coffey, and Coffey began to use the property as a parking lot.

1950. The City of Los Angeles foreclosed improvement liens against the property for unpaid special assessments dating from 1914 to 1949 and the property was deeded to the city.

1951. By tax deed the State of California conveyed the property to the County of Los Angeles.

1961. The City of Los Angeles filed the present suit to quiet title against Coffey and the County of Los Angeles.

In this proceeding Coffey claims title to the property by adverse possession commencing in 1949 and continuing for more than 10 years. (Code Civ. Proc., § 315.) The trial court rejected his claim, and so do we, for we find it invalid on at least two grounds.

1. Coffey's claim of adverse possession was cut off in 1951 by the State of California's conveyance to the County of Los Angeles. Two and a half years after Coffey took possession of the property the state conveyed title to the County of Los Angeles. Under the provisions of Civil Code, section 1007, title by adverse possession cannot be acquired against a city, a county, or a public corporation: ". . . no possession by any person . . . no matter how long continued of any land . . . owned by any county, city and county, city, irrigation district, public or municipal corporation or any department or agency thereof, shall ever ripen into any title, interest or right against such county, city and county, city, public or municipal corporation [etc.]. . . ."

Formerly, lands held in a proprietary capacity by the state or a municipality and not devoted to public use, were subject to loss of title by adverse possession. (*People* v. *Banning Co.*, 167 Cal. 643, 647-648 [140 P. 587]; *Ames* v. *City of San Diego*, 101 Cal. 390, 394 [35 P. 1005].) But in 1935 the Civil Code was amended to prohibit the acquisition of title by adverse possession against the governmental entities listed in section 1007. (*Southern Pac. Co.* v. *City & County of San Francisco*, 62 Cal.2d 50, 53-54 [41 Cal.Rptr. 79, 396 P.2d 383];

*People* v. *Chambers,* 37 Cal.2d 552, 556-557 [233 P.2d 557].)
Coffey contends the 1935 amendment did not change the rule
permitting adverse possession against property held by the
state in a proprietary capacity and not devoted to public use.
(*Henry Cowell Lime & Cement Co.* v. *State,* 18 Cal.2d 169, 172
[114 P.2d 331].) Although this argument presents an interest-
ing legal question[1] (2 Witkin, Summary of Cal. Law (1960)
p. 871), we find it unnecessary to consider the question in this
case, for it is clear that Coffey was not an adverse possessor
against the state for the requisite 10-year period. (Code Civ.
Proc., § 315.) Assuming possession by Coffey adverse to the
state, still such possession only ran from 1949 to 1951, at
which time the state conveyed the property to the County of
Los Angeles. Since the county is a governmental unit whose
real property is immune from loss by adverse possession,
Coffey's occupancy of the property subsequent to 1951 no
longer amounted to legal possession adverse to the owner of
record. At most, therefore, Coffey was an adverse possessor for
two and a half years and not the 10 years required by
statute.

▇▇▇ Coffey argues, however, that once he occupied the
property and entered possession adverse to the State of Cali-
fornia, his possessory rights continued to accrue, even though
the state prior to the expiration of the 10-year period conveyed
the property to an entity against which he could not initially
have acquired rights through adverse possession. Under this
argument once Coffey commenced to occupy the property
adversely to a nonexempt entity, his occupancy continued to
amount to legal possession against all subsequent holders of
title, even governmental entities immune from the effects of
adverse possession.

Acceptance of this argument would largely nullify the
specific language of Civil Code, section 1007. Under Coffey's
interpretation, an adverse possessor would merely have to find
that at some time during his occupancy a nonexempt entity
held title to the property; once this event had occurred his
possession would continue to run against all subsequent title
holders, exempt or nonexempt. This theory flies in the face of

---

[1]The Supreme Court has recently stated, "Because property owned by
the state or any of its subdivisions has not been subject to loss through
adverse possession since the 1935 amendment of section 1007 of the Civil
Code . . . the relevant period [of the statute of limitations in Code of
Civil Procedure, section 315] in this case covers the 10 years preceding
1935." (*Southern Pac. Co.* v. *City & County of San Francisco,* 62 Cal.2d
50, 54 [41 Cal.Rptr. 79, 396 P.2d 383].)

the language of section 1007 stating that no possession no matter how long continued "shall ever ripen into any title" against a city or against a county. The language of the section is quite specific, and we think it comprehends that on a transfer of property to an exempt entity, such as a city or a county, possessory rights arising from adverse occupancy cease to be effective. On such a transfer the occupier's possessory rights no longer ripen into title but automatically die on the vine. (3 Am.Jur.2d, Adverse Possession, § 75; *People* v. *Chambers,* 37 Cal.2d 552, 557 [233 P.2d 557].)

2. Coffey's adverse possession was also cut off by the City of Los Angeles' acquisition of title in 1950. At that time the city foreclosed liens for unpaid special assessments levied against the property between 1914 and 1949 and secured a legal title to the property through deeds of conveyance from its authorized agents. Even though title to the property had previously passed to the state, the property continued to remain subject to past and present liens for unpaid local assessments for special improvements. (Rev. & Tax. Code, § 3520.) "Local assessments do not come within the meaning of the word 'tax' as used in the constitutional provision exempting lands of the state from taxation." (*Estate of Simpson,* 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991]; *Conley* v. *Hawley,* 2 Cal.2d 23, 25-27 [38 P.2d 408].) The deeds to the city were prima facie evidence of the validity of these special assessments and of their existence as continuing liens against the property for unpaid taxes. (Gov. Code, § 43004; Rev. & Tax. Code, §§ 3517, 3518.) Once the city acquired a valid legal title, Coffey's claim of adverse possession was suspended, and it remained suspended thereafter because of Coffey's failure to redeem the property. (*Spotswood* v. *Spotswood,* 4 Cal.App. 711, 715-716 [89 P. 362].) In order to perfect a claim by possession an adverse occupier must clear all legal titles arising from liens for unpaid taxes which have been foreclosed against the property during the period of his occupation. (Code Civ. Proc., § 325; *Cottle* v. *Gibbon,* 200 Cal.App.2d 1, 9 [19 Cal. Rptr. 82]; *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707 [336 P.2d 525].) By reason of its execution on the unpaid special assessments, the city's title remained in effect from 1950 to the filing of this suit. Against that title Coffey could acquire no rights by adverse possession. (Civ. Code, § 1007.)

Since Coffey's occupancy did not amount to adverse possession against the county or against the city, we find it

unnecessary to consider the question of public dedication or the validity of Coffey's occupancy as against the city's lessee. As between the city and the county, the trial court found that the city was the sole owner of the easternmost third of the property, which had been conveyed to it in 1951 by the county for public street purposes, and that the city and the county were tenants in common of the remaining two-thirds of the property, since both relied on tax deeds which have been placed on a parity with each other regardless of date. (Rev. & Tax. Code, § 3900.) These conclusions were correct.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied July 15, 1966.