Filed 12/24/24  Milway v. Wilcoxson CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS MILWAY et al.,<br><br>    Cross-complainants, Cross-defendants, and Respondents,<br><br>v.<br><br>CHARLES WILCOXSON et al.,<br><br>    Cross-defendants, Cross-complainants, and Appellants. | A168895<br><br>(Contra Costa County Super. Ct. No. MSC1900771) |

At issue in this litigation are easement rights associated with a parcel of real estate (1000 Homestead) owned by respondents Thomas Milway and Megan Hansen (the Milways).  Appellants Charles Wilcoxson and Sherry Wilcoxson (the Wilcoxsons) are neighbors of the Milways.  While the Milways moved into the neighborhood in 2017, the Wilcoxsons' home has been in Sherry Wilcoxson's family since the late 1950s.

Neighbors, including the Wilcoxsons, have historically used a cut-through path that crosses over the Milways' property at 1000 Homestead to access a private road that connects to their properties.  After moving into the neighborhood, the Milways blocked access to that cut-through path based on alleged safety concerns.  As a result, the neighbors and the Milways have engaged in a flurry of litigation.  Various neighbors, excluding the

Wilcoxsons, filed a complaint against the Milways alleging prescriptive and deeded easement rights to the cut-through path. In response, the Milways filed a cross-complaint against those neighbors, the Wilcoxsons, and the sellers of 1000 Homestead, alleging in part that it was not possible for individuals to access the cut-through path without crossing part of 1000 Homestead over which no party had any easement rights. The Wilcoxsons then filed their own cross-complaint, seeking declaratory relief regarding various ownership and easement rights associated with 1000 Homestead and alleging nuisance based on the Milways' interference with the Wilcoxsons' easement rights and use of the cut-through path.

The trial court granted the Milways' summary judgment motion as to the Wilcoxsons' cross-complaint, as well as the Milways' summary adjudication motion as to part of the first cause of action and the third cause of action of the Milways' cross-complaint. Because the trial court erred in finding no triable issue as to the Wilcoxsons' prescriptive easement claim, we reverse the judgments in part and affirm the judgments in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties are neighbors. The Wilcoxsons access their property via Alwin Road, a small road that runs adjacent to the side of the Milways' property at 1000 Homestead. Alwin Road intersects with a larger street, Homestead Avenue. Homestead Avenue runs adjacent to the front of 1000 Homestead.

As can be seen in the property survey, below, the relevant property lines for 1000 Homestead run along Alwin Road to the center lines of Homestead Avenue and Walnut Boulevard. (See Fig. 1, lot labeled "Milway/Hansen.")

2

Within those boundaries, the original 1942 deed between the grantor, Lakewood Company, and grantee, A. Gonzotto, for the Milways' property at 1000 Homestead reserved to the Lakewood Company a 30-foot right-of-way measured from the center line of Homestead Avenue, and a 30-foot right-of-way measured from the center line of Walnut Boulevard. (See Fig. 1.) The actual roadway for Homestead Avenue only utilizes a portion of the Homestead Avenue right-of-way.

1000 Homestead also contains a recorded, non-exclusive 11-foot easement that runs adjacent to Alwin Road and terminates at the Homestead Avenue 30-foot right-of-way. (See Fig. 1.) The purpose of the 11-foot deeded easement and the two rights-of-way was "for use as a roadway for vehicles of all kinds, pedestrians and animals, for water, gas, oil and sewer pipe lines, and for telephone, electric light and power lines, together with the necessary poles or conduits to carry said lines."

**Fig. 1**



A fence and shed rendered the majority of the 11-foot easement inaccessible since 2003.  However, a portion of the 11-foot easement— approximately 136 square feet connecting Alwin Road to the driveway of 1000 Homestead, the Milway property—remained accessible.  (See Fig. 2.)

4

**Fig. 2**



Since at least the late 1950s, a diagonal "cut-through" path[1] provided a second access point to Alwin Road from Homestead Avenue. The record indicates the cut-through path was primarily used to turn onto Alwin Road, with the main entrance being used to exit Alwin Road and turn onto Homestead Avenue. While a portion of the cut-through path lies on the 136

---

[1] This path has also been referenced as a "diagonal access," "diagonal entry," and "driveway connector." For purposes of this opinion, we will refer to it as the cut-through path.

square foot section of the deeded easement, the remaining portion resides on a section of 1000 Homestead for which there is no deeded easement rights.

In 2017, the Milways purchased 1000 Homestead from Henry and Anne Bailey. To access the cut-through path, individuals turning off Homestead Avenue must first drive across part of the Milways' driveway before then reaching a section of the 11-foot deeded easement that connects the final portion of the cut-through path to Alwin Road. (See Fig. 2.) Because the Milways believed individuals using the cut-through path were driving unsafely, they blocked access to their driveway, which had the effect of blocking access to the cut-through path. They also informed various neighbors, including the Wilcoxsons, that they were revoking authorization for individuals to use their property to access the cut-through path.

Greg Hart, Steven Hart, Kristin Hart, and Janine Senior—individuals who owned properties accessed via Alwin Road—filed a complaint against the Milways regarding access to, and use of, the cut-through path. They alleged the Milways' deed to 1000 Homestead contained an easement, and the Milways intentionally placed objects to interfere with their use of that easement. They further alleged they have openly used and crossed over a portion of 1000 Homestead for over 50 years to access Alwin Road, and thus have an equitable and prescriptive easement to the cut-through path.

In response, the Milways filed a cross-complaint against the Harts and Senior, as well as the Wilcoxsons and the Baileys. The cross-complaint noted none of the cross-defendants' deeds contained any easement rights to any portion of 1000 Homestead, the Milways' property, apart from the 11-foot strip of land along the northern portion of their property running parallel to Alwin Road. The cross-complaint further alleged it was not possible for individuals to use the cut-through path to access Alwin Road from

6

Homestead Avenue without crossing part of 1000 Homestead over which no party had any easement rights. As relevant to this appeal, the cross-complaint asserted causes of action for (1) declaratory relief, and (2) quiet title.[2]

The Wilcoxsons filed a motion for summary judgment or, alternatively, summary adjudication of the Milways' cross-complaint. Following briefing and argument by the parties, the court denied the motion. After first noting significant procedural errors that justified denial of the motion, the court concluded "that on the merits it must deny this motion." In relevant part, the court first explained the Wilcoxsons could not prevail on the Milways' quiet title cross-claim because they failed to address all allegations related to the 11-foot easement, "including that the strip is not needed, the strip has been enclosed by a fence for more than 5 years, [and] the deeded easement rights over the strip were created by mistake." The court then concluded the Wilcoxsons failed to prevail on their prescriptive easement argument because the proffered affidavits merely described use rather than adverse use.

The Wilcoxsons subsequently sought leave to file a cross-complaint against the Milways, alleging causes of action for: (1) declaratory relief regarding the boundary line between 1000 Homestead (the Milways' property) and 20 Alwin Road (the Harts' property), (2) declaratory relief regarding ownership of Alwin Road, (3) declaratory relief regarding a determination of the deeded and prescriptive easements on 1000 Homestead, (4) private nuisance regarding the Milways' alleged interference with use of

---

[2] The Milways also asserted claims for equitable indemnity (second cause of action) and misrepresentation (fourth cause of action) against the Baileys. However, the claims against the Baileys were sent to arbitration. The Milways also eventually dismissed the Harts and Senior from their cross-complaint.

7

their easement rights, and (5) private nuisance regarding the Milways' interference with the cut-through path. The court granted the request.

The Milways filed a motion for summary judgment or, alternatively, summary adjudication as to all five causes of action in the Wilcoxsons' cross-complaint. They also filed a separate motion for summary adjudication of their cross-complaint against the Wilcoxsons. In that motion, they sought summary adjudication of (1) the Wilcoxsons' claim to any "title, right, estate, lien or interest" in the Milway property (first cause of action, issue one), (2) the Wilcoxsons' claim that a 28-foot strip of land extending from 20 Alwin Road to Homestead Avenue is part of the property of Kristin and Steve Hart (first cause of action, issue two), and (3) their third cause of action to quiet title.

Following extensive briefing and argument, the court granted the Milways' motion for summary judgment of the Wilcoxsons' cross-complaint (causes of action one through five) and granted in part the Milways' motion for summary adjudication of certain issues in their own cross-complaint (issues one and three, which were relevant to the first cause of action and the third cause of action respectively). As relevant to this appeal, the court concluded "[t]he Milways have met their burden of showing there is no claim for a prescriptive easement over the portion of the cut-through not covered by the 11-foot easement." The court first summarized the evidence related to continuous use: "There is evidence that Sherry used the cut-through when she was a child and then drove on the cut-through for about two years before leaving for college and then occasionally thereafter when she visited her parents." Based on this record, the court concluded, "The Milways' evidence raises an inference that Sherry did not use the cut-through continuously."

8

The court next addressed the question of whether any use was hostile. The court concluded the evidence demonstrated Sherry Wilcoxson's use of the cut-through was not hostile because during 1952 to 1968 "Sherry testified that she never had permission to use the cut-through," the prior owners of 1000 Homestead (the Fisks) "were aware that Sherry used the cut-through," and "they implicitly gave their permission." The court also relied on a declaration from Jeannette Kade, another neighbor, who the Fisks had allowed use of the cut-through path as a "neighborly accommodation," and her husband had obtained explicit permission from the subsequent former owners of 1000 Homestead (the Baileys) to use the cut-through path. The court further found the various affidavits submitted by the Wilcoxsons were insufficient to raise a fact dispute. The court noted those affidavits "show that people living on Alwin Road used the cut-through without specific permission from the Fisks, but . . . do not address whether the Fisks gave their implicit permission. The Fisks gave at least some people (the Kades) explicit permission to use the cut-through and they did not object when other neighbors also used the cut-through. These facts are insufficient to show hostile use by the people who provided affidavits, including Sherry Wilcoxson."

Because the court found no triable issue as to the prescriptive easement, it found the 136 square foot section of the 11-foot deeded easement to be "not useable as a roadway as it goes nowhere but to the Milways' unencumbered property." The court thus found the easement of the 136 square foot area "extinguished due to changed circumstances," and granted the motion as to the third cause of action.[3] The court then applied this

---

[3] The court also granted summary judgment as to the first cause of action based on the Wilcoxsons lack of standing regarding a property line between the Milways and the Harts and the second cause of action for lack of

reasoning to grant summary adjudication of the first and third issues in the Milways' motion for summary adjudication of their cross-complaint.

The Wilcoxsons timely appealed.

DISCUSSION

On appeal, the Wilcoxsons claim the trial court drew "improper inferences" against them related whether the Wilcoxsons had prescriptive and deeded easement rights to the cut-through path. They also contend the trial court improperly terminated the 11-foot deeded easement and failed to consider the numerous disputed material facts when granting summary judgment and summary adjudication.

## I. Standard of Review

The standard of review for summary judgment and summary adjudication motions is well established. "Summary adjudication motions are 'procedurally identical' to summary judgment motions. [Citation.] A summary judgment motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the 'action has no merit or that there is no defense' thereto. [Citation.] A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. [Citations.] Once the defendant makes this showing, the burden shifts to the

---

evidence regarding ownership of Alwin Road. The court denied summary adjudication of issue two—the Harts' ownership of a section of land—as moot because the Harts were no longer parties to the cross-complaint. The Milways subsequently dismissed this claim. These rulings are not at issue on appeal.

10

plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. [Citations.] Material facts are those that relate to the issues in the case as framed by the pleadings. [Citation.] There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859–860 (*Serri*).)

"The trial court's ruling on a motion for summary adjudication, like that on a motion for summary judgment, is subject to this court's independent review." (*Serri, supra*, 226 Cal.App.4th at p. 858.) "In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [the] evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Id*. at p. 859.)

## II. Scope of Appeal

As an initial matter, the parties dispute the scope of the appeal. As noted above, the Milways filed a motion for summary judgment as to the Wilcoxsons' cross-complaint, and a motion for summary adjudication as to their cross-complaint against the Wilcoxsons. The Milways raise two issues with the scope of the appeal. First, they contend the Wilcoxsons cannot appeal from the summary adjudication motion because it did not dispose of all causes of action between the parties. Second, they assert the opening brief only challenges the summary judgment motion. In response, the Wilcoxsons argue they are properly challenging the rulings as to both motions because the two motions were heard on the same day, involve the same facts, and were granted in the same written order.

11

As to the first issue, the court only granted summary adjudication as to one issue in the first cause of action and the third cause of action of the Milways' cross-complaint. However, the Milways overlook the fact that they subsequently dismissed the Wilcoxsons from the second issue in the first cause of action. (See Footnote 3, *ante*.) Thus, as noted by the subsequent judgment, the court's order combined with the dismissal, "disposed of all aspects of the Second Amended Cross-Complaint as between [the Milways] and the Wilcoxsons." Accordingly, the Wilcoxsons could properly appeal from the judgment granting summary adjudication.[4]

We likewise reject the Milways' second argument attempting to limit the appeal to only the summary judgment motion. Undoubtedly, the Wilcoxsons' brief primarily—although not exclusively—cites evidence submitted in connection with the motion for summary judgment. However, as noted by the trial court's order, in ruling on the motion for summary adjudication it "use[d] the discussion of facts included in the accompanying motion for summary judgment" because "the facts and evidence are nearly the same in both motions." Likewise, in addressing the merits of the

---

[4] The notice of appeal states it is appealing from a "judgment after an order granting a summary judgment motion," but identifies the relevant date as August 18, 2023—i.e., the date of the *order* granting the summary judgment and summary adjudication motions rather than the dates of the subsequent judgments. Orders granting summary judgment or summary adjudication are not appealable; appeal lies from a judgment entered on the order. (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 14, fn.1; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶¶ 2:241, 2:241.1.) However, the record contains judgments entered on both motions. In the interest of justice and to avoid delay, we construe the notice of appeal as appealing from the subsequent judgments entered as to each cross-complaint. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 6; *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101–1102.)

12

summary adjudication motion the court (1) noted the Milways' argument "is nearly identical" to its argument in connection with summary judgment motion, and (2) granted summary adjudication "[f]or the same reasons discussed in the accompanying [summary judgment] motion." Accordingly, we consider the Wilcoxsons' arguments on appeal to challenge the rulings as to both motions.

## III. Summary Judgment

The Wilcoxsons contest two "inferences" adopted by the trial court as part of its ruling. First, the Wilcoxsons challenge the inference that Sherry Wilcoxson did not use the cut-through continuously and that her use was not hostile. The Wilcoxsons reference both their affidavits and various affidavits of neighbors stating they used the cut-through without permission. Second, they assert the trial court erroneously concluded that the 136 square-foot portion of the 11-foot deeded easement "goes nowhere" and that, to the contrary, the easement connects directly to Homestead Avenue.

### A. Prescriptive Easement Rights

" 'An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land. [Citations.] [¶] An easement creates a nonpossessory right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement.' " (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1053–1054.)

"A prescriptive easement will be found where the party seeking the easement proves use of the property for the statutory period of five years and where the use has been ' "(1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right." ' [Citation.] In other words, ' "[a]n easement acquired by prescription is one

13

acquired by adverse use for a certain period." ' [Citation.] ' "Adverse use" means . . . that the claimant's use of the property was made without the explicit or implicit permission of the landowner.' [Citation.] This requirement ' " 'ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so.' " ' " (*Batta v. Hunt* (2024) 106 Cal.App.5th 295, 305.)

At issue in the summary judgment and summary adjudication motions are two of these factors: hostile use and continuous use. We address each in turn.

### 1. Hostile Use

The Milways alleged the following facts in connection with the issue of hostile use: (1) the sellers of 1000 Homestead "wrote [on the disclosure document] that they had a verbal agreement with the neighbors which allowed the neighbors to use the [1000 Homestead] driveway and cut-through to access Alwin Road" (Separate Statement #27); (2) the seller's agent informed the Milways "of the same verbal agreement" (Separate Statement #28); (3) one neighbor, Jeanette Kade, stated her husband obtained permission from the prior owners to use the cut-through (Separate Statement #29); and (4) prior owners of 1000 Homestead "knew Sherry Wilcoxson was using the cut-through, but never told her she couldn't use it" (Separate Statement #36).

The Wilcoxsons disputed these facts. They alleged a past verbal agreement does not negate the existence of a prescriptive easement and cited to submitted affidavits in which they, and other neighbors, claimed they used the cut-through path without permission. The Wilcoxsons did not dispute

14

that the prior owners of 1000 Homestead were aware of Sherry Wilcoxson's use of the cut-through path and never objected to such use.

Contrary to the trial court's conclusion, the prior owner's knowledge of Sherry Wilcoxson's use of the cut-through path, combined with their silence on such usage, does not necessarily equate to implicit consent. In *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564 (*Warsaw*), trucks and other vehicles accessing the plaintiffs' commercial building had used a portion of the defendant's property without interference to enter, turn, park and leave the plaintiffs' loading dock. (*Id.* at p. 570.) After the parties were unable to agree to an easement, the defendant took steps to block access to the portion of its property being used by the plaintiffs' trucks. (*Ibid.*) The trial court found the plaintiffs had acquired a prescriptive easement over part of the defendant's property. (*Ibid.*) The defendant argued the plaintiffs' use was not hostile because the plaintiffs had attempted to purchase the disputed property and negotiate an easement. (*Id.* at pp. 571–572.) The California Supreme Court rejected the defendant's assertion that such evidence demonstrated permissive, rather than hostile, use. The court explained "continuous use of an easement over a long period of time without the landowner's interference is *presumptive evidence* of its existence."[5] (*Id.* at p. 571, italics added; *Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450 [" 'In most of the cases asserting [the requirement of a claim of right], it

_____

[5] The California Supreme Court has also articulated a separate standard, in which a party's use of the defendant's property openly and without obstruction gives rise to an inference of hostile use rather than a presumption of hostile use. (*O'Banion v. Borba* (1948) 32 Cal.2d 145, 150.) For purposes of this appeal, we need not resolve the proper standard. Under either approach, the trial court erred in concluding that the prior owners' knowledge of the cut-through's use plus their silence constituted implicit permission.

15

means no more than that possession must be hostile, which in turn means only that the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of adverse claim on the part of the possessor.' "].)  Here, the record indicates the prior owners of 1000 Homestead were aware of Sherry Wilcoxson's use of the cut-through path and did not discuss such usage with her or otherwise object.  These facts are "presumptive evidence of [the easement's] existence."  (See *Warsaw*, at p. 571.)

Alternatively, the Milways argue express permission had been granted by prior owners of 1000 Homestead.  Where initial use of property is permissive, it cannot become adverse without clear notice to the owner of the adverse nature of the subsequent use.  (*Southern Pacific Co. v. City and County of San Francisco* (1964) 62 Cal.2d 50, 56 [discussing adverse possession]; see also 6 Miller & Starr, Cal. Real Estate (4th ed. 2024) Easements, § 15:36 ["Once permission is given, it is presumed to continue until the user communicates to the servient tenement owner a clear and unqualified disclaimer and repudiation of the permission"].)  The Milways rely on the Kade declaration, which stated that the prior owners gave permission for neighbors to use the cut-through path as a neighborly accommodation.  In response, the Wilcoxsons submitted declarations disputing the Kade declaration and declaring that no such permission was ever sought or received.  "Whether the use is hostile or is merely a matter of neighborly accommodation . . . is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties." (*Warsaw*, *supra*, 35 Cal.3d at p. 572.)  It is the role of a fact finder to make this determination because the inquiry is often "imbued with overtones of local norms, customs, and expectations."  (*Friends of the Trails v. Blasius*

16

(2000) 78 Cal.App.4th 810, 825.) Here, the Kade declaration does not indisputably prove the prior owners of 1000 Homestead gave express permission to neighbors or, specifically, the Wilcoxsons, to use the cut-through. The Kade declaration only states (1) neighbors would use the cut through "[w]ith the permission of the [prior owners]", and (2) the prior owners repaved the cut-through as "a neighborly accommodation that they agreed to." But Kade's declaration does not say whether this permission was express, to whom specifically it was given, or what (if any) agreements were made when the cut-through was repaved. As noted above, knowledge and silence do not prevent hostile use. Accordingly, the conflicting declarations raise a fact issue, which is not appropriate for resolution at the summary judgment stage.

Based on the foregoing, the trial court erred in concluding the Wilcoxsons' use of the cut-through was not hostile for purposes of the summary judgment and summary adjudication motions. Rather, the evidence raises a fact question regarding the nature of the Wilcoxsons' use of the cut-through path, and the prior owners' silence cannot be construed—at this stage—as implicit consent.

### 2. Continuous Use

The trial court also concluded the Wilcoxsons' use of the cut-through path was not continuous as required for a prescriptive easement. As noted above, a party claiming a prescriptive easement must demonstrate continuous use for a period of five years. (*Warsaw*, *supra*, 35 Cal.3d at p. 570.)

In arguing that the Wilcoxsons did not satisfy this continuous use requirement, the Milways asserted "Sherry Wilcoxson occasionally used the cut-through from 1959 to 1961, when she lived at 30 Alwin Road" (Separate

17

Statement #35), she "infrequently" came home to visit between 1962 and 1966 when she went to college (Separate Statement #37), and "[b]etween 1967 and March 2018, Sherry Wilcoxson only stayed at the 30 Alwin Road residence for two protracted [6-month] periods" (Separate Statement #39). In response, the Wilcoxsons disputed the frequency of her use. They argued she moved into 30 Alwin Road in 1952 at the age of nine, would "frequently return home" during her college years, and "had many visits to 30 Alwin over the years."

The Milways are correct that the Wilcoxsons fail to cite valid evidence to support their opposition. Specifically, the Wilcoxsons cite to Sherry Wilcoxson's declaration—a document that does not appear to exist. However, the Milways "bear[ ] the burden of persuasion that there is no triable issue of material fact and that [they are] entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) And the Wilcoxsons' failure to adequately oppose summary judgment does not excuse the Milways from " ' " ' "establishing *every element* . . . necessary to sustain a judgment in [their] favor." ' " ' " (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.) As discussed below, the Milways have failed to carry their burden.

In support of their argument that the Wilcoxsons' use was not continuous, the Milways primarily rely on Sherry Wilcoxson's deposition testimony. The excerpts of that testimony included in the record set forth the following facts: Sherry Wilcoxson moved to 30 Alwin Road in 1952 when she was nine. She obtained her driver's license in approximately 1959 and would use the cut-through path for driving, walking, or riding her bicycle prior to leaving for college in 1961 or 1962. While at college, she "[i]nitially . . . went home pretty often" because she was homesick and then "didn't go home very

18

often." She would also go home for vacation "occasionally." Between the end of college in 1966 and 1972 when she moved overseas, the record is silent as to where she resided or how frequently she may have been at Alwin Road. Between 1972 and 1978 she resided overseas. However, at some point during that period Sherry Wilcoxson experienced medical issues and returned and lived at 30 Alwin Road for an approximate 6-month period. After returning from overseas, she resided in Orinda, California and Martinez, California before moving to 30 Alwin Road in 2018. In approximately 2011, she spent another 6-month period at 30 Alwin Road with her mother after her father died. Prior to staying with her mother, she was "over there probably at least once a week."

From this testimony, the trial court erred by inferring the Wilcoxsons' use of the cut-through path was not continuous as a matter of law. Satisfaction of the "continuous use" element " 'depends on the nature of the easement. It need not be used every day during the prescriptive period. The use is sufficient if it occurs on those occasions when it is necessary for the convenience of the user.' [Citation.] . . . 'The claimant is [only] required to make such reasonable use of the way as his needs require.' " (*Fogerty v. State of California* (1986) 187 Cal.App.3d 224, 239; *Twin Peaks Land Co. v. Briggs* (1982) 130 Cal.App.3d 587, 593 ["[W]henever the respondent (and its predecessors) needed the roadway from time to time, it made use of it; this is 'a continuous use.' "]; *Zimmer v. Dykstra* (1974) 39 Cal.App.3d 422, 432 ["use may be *continuous* . . . though there are periods of time more or less extended between the specific acts of use. Many easements, such as rights of way and rights of hunting or fishing, which are periodical or only occasional in use may be acquired by prescription."].) Here, Sherry Wilcoxson testified she regularly used the cut-through path while residing at home prior to college,

19

and we can infer she used the cut-through path during her visits home from college—which initially were "very often" and then became "occasional."  In addition, after returning from overseas in 1978, Sherry Wilcoxson testified they visited 30 Alwin Road "at least once a week" before she lived at 30 Alwin Road for six months in 2011, and she presumably used the cut-through path as needed during those visits.  For either period, the Milways fail to cite any authority suggesting the frequency of the Wilcoxsons' use was insufficient as a matter of law to constitute continuous use for purpose of creating a prescriptive easement.

Moreover, while a prescriptive easement may be extinguished by nonuse, the Milways also have failed to set forth undisputed facts supporting any extinguishment.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 295 ["Civil Code section 811, is an exception to the rule that a vested property right cannot be lost by the failure to use it. [Citation.] Under this subdivision, a prescriptive right is extinguished solely as the result of disuse for the prescriptive period; evidence of intentional abandonment or adverse use by another is unnecessary."].)  Between 1967 and 2018, the parties do not dispute that Sherry Wilcoxson only returned to 30 Alwin Road for two "protracted" 6-month periods.  However, the moving papers fail to discuss how frequently she returned and used the cut-through during this period.  And, as discussed in the prior paragraph, Sherry Wilcoxson testified she visited 30 Alwin Road on a weekly basis; this testimony indicates that extinguishment of the prescriptive easement cannot be found as a matter of law.[6]

---

[6] We do not consider the other neighbors' use of the cut-through in assessing whether a disputed fact exists regarding continuous use.  The Wilcoxsons' prescriptive easement claim must be based on their individual

20

Accordingly, the Milways' evidence in support of their separate statement and reasonable inferences therefrom have not established that the Wilcoxsons did not continuously use the cut-through path as required to establish a prescriptive easement as a matter of law.  The trial court erred in finding otherwise.

## B.  The 11-Foot Deeded Easement

The Wilcoxsons also assert triable issues of material fact exist as to the 136 square-foot portion of the 11-foot deed easement that contained part of the cut-through path.  They contend that section of the deeded 11-foot easement was regularly used, they did not indicate any intent to abandon the cut-through path, and it is useable as a roadway because it directly connects Homestead Avenue to Alwin Road.

Because we conclude the Milways failed to demonstrate that no disputed material facts existed as to the prescriptive easement claim, their claims regarding the 11-foot deeded easement must also fail.  If the trier of fact eventually determines the Wilcoxsons have prescriptive easement rights to the cut-through path, then the 136 square-foot section of the 11-foot deeded easement would obviously have use as a roadway.[7]

---

use of the route, rather than use by other neighbors or the public.  (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710.)

[7] The Wilcoxsons also argue—without significant discussion—that the 136 square-foot section directly connects Homestead Avenue to Alwin Road and can be used as a roadway without accessing 1000 Homestead.  The issue appears to turn on who may have a right-of-way to a section of property between the actual roadway of Homestead Avenue and the 11-foot deeded easement.  That section of property appears to be both part of 1000 Homestead *and* included in a 30-foot easement retained by the Lakewood Company for a roadway and other purposes.  However, neither party address who may have a right to use that section of property, which is needed to

While the Wilcoxsons have not challenged on appeal the trial court's ruling that their right to the 11-foot deeded easement apart from the 136 square-foot portion was extinguished by adverse possession, we cannot affirm summary adjudication as to a part of this easement.[8]  (Code Civ. Proc., § 437c, subd. (f)(1) ["A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."].)  Accordingly, we reverse the trial court's order extinguishing the 11-foot easement in its entirety.

## DISPOSITION

The judgments are affirmed in part and reversed in part.  Summary judgment of the Wilcoxsons' cross-complaint as to the third, fourth, and fifth causes of action are reversed.  Summary judgment of the Wilcoxsons' cross-complaint as to the first and second causes of action are affirmed.  Summary adjudication of the Milways' cross-complaint as to the first (the Wilcoxsons' claim to any "title, right, estate, lien or interest" in the Milway property) and third (cause of action to quiet title) issues are reversed.  Summary adjudication of the Milways' cross-complaint as to the second issue (the Wilcoxsons' claim that a 28-foot strip of land extending from 20 Alwin Road to Homestead Avenue is part of the Harts' property) is affirmed.  The Wilcoxsons may recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

connect the 11-foot deeded easement to the paved roadway of Homestead Avenue.

[8] Because we reverse the trial court's holding as to the 11-foot deeded easement, we need not address whether the trial court erred in opting to terminate, rather than modify, the easement.  Nor do we need to discuss the adequacy of the authorities on which the trial court relied.

22

_____
PETROU, J.


WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.


*Milway et al. v. Wilcoxson et al.*/A168895